The next case today, number 231476, Robert Nightingale v. National Grid USA Service Company Inc. et al. Attorney Taylor, please introduce yourself for the record. Stephen Taylor from Lemberg Law for the appellant, Your Honors. If I may have five minutes for rebuttal. Yes, you may. Thank you, Your Honor. Below the district court, grant the defendant's motion for summary judgment and deny the plaintiff's motion for class certification. In doing so, the district court added extra elements to the plaintiff's 93A claim. In particular, the judge found that in order to establish an injury for Section 93A, Section 9 purposes, the plaintiff had to establish the elements of intentional and fictional emotional distress and an evasion of privacy showing an intentional evasion upon the seclusion of the consumer. Nowhere in Chapter 93A, Section 9 are those extra elements present. What Chapter 93A says is that someone must show, must have an injury. The SJC has established or has interpreted the term injury in broad terms as the evasion of a legally protected interest of the consumer or plaintiff as a harm. It can be economic damage, it can be non-economic damage. Specifically, Your Honors, in the case Tyler v. Michaels, the SJC found that the receipt of unwanted marketing material, a letter in the mail, constituted sufficient injury because it was an evasion of the consumer's personal privacy. That did not require intentionality, did not require outrageous conduct. The SJC did not concern itself with the elements of separate courts. That there was some evasion to the privacy of the individual was sufficient for injury purposes under Section 9. Below, the district court required that the plaintiff find or show that the evasion was intentional, outrageous, that it caused a severe reaction on behalf of Mr. Nightingale or class members. But that is not what's stated in the statute. It's not what the regulation solely prohibits, and it's not what the SJC had held before. Flowing from the decisions on the individual claim, the district court found that the plaintiffs couldn't satisfy the predominance inquiry for class certification. Specifically, if we needed to show that there was an evasion of privacy for seclusion, evasion was serious, the reaction of the debtors who were so invaded, and that we couldn't do that on a class-wide basis because you would need proof from everybody who had been called for the defendant's collection efforts. However, the court applied the wrong standard. Our theory of the case is that when a debt collector is making excessive calls, which there's no dispute here that National Grid and its servicing agents were, that it is instituting additional pressure on debtors. And that of itself is a sufficient evasion of the privacy of the consumers. Aren't you arguing a now repudiated version of Massachusetts law? I mean, you seem to be arguing that once you have proven that there was a violation of the rule in this case, you have also proven the injury without more. It becomes a per se violation. There was an earlier decision of the Mass Supreme Court that seemed to support that view of the law, and they, in subsequent cases, explicitly walked back from that and made clear, and this is the view the district court took, that there has to be separate proof of the nature of the injury. You don't meet that requirement by simply proving, I guess, what might be called the liability portion. You've established potential liability, but you have to prove the damages separately, and you're arguing that's just not the law, but that does seem to be the law under the Supreme Court. That is the law, but that's misconstruing what this regulation prohibits. It prohibits initiating excessive communications. So the violation occurs at the time National Grid and its agents initiate an additional call in a seven-day period. That means when their dialers are set and it hits a fax machine, that's a violation of the regulation. When the dialers dial, and even if it's busy, that's a violation of the terms of the regulation. But the separate injury occurs after initiation, here when there's a message left, when there's a successful call. It's definitely part of the same chain of events. We're not disputing that, but the actual conduct that violates the statute is the initiation of the call you're on. It's not when they reach Mr. Nightingale. It's not when they leave a message on a class member's machine. So they could have called him in violation of the statute. He's not there. His voicemail box is filled, and so after the call is accepted, there's no message for them to leave, no record that they called other than in their records. There would have been a violation then of the statute because they initiated a call, but he would not have damages under that scenario. However, when he's there and he's interrupted, like when he receives a marketing material in the mail, then there's been injury. Yes, Your Honor. That's your theory. And, you know, so if a company was out there and they had a dialer that was making calls but was just going to dead air constantly, the AG could bring an action against somebody for that. Now, they would have a defense to say, we aren't able to reach somebody. That's a separate question as to whether or not there was a violation, a separate violation, and an injury when there's a completed call. And what's your numerosity showing here? Well, for numerosity, there's two parts of it. One, the defendant admitted that they called over 300,000 people in total when they were 300,000 accounts more than twice in a seven-day period. In Massachusetts? In Massachusetts. But for the classes we were seeking to certify, it's smaller than that. It's around 100,000 or so because we limited it by, okay, how old is the debt? We limited it to accounts where it's over 30 days past due. And we also limited the calls that we were considering as violations of the act because we didn't want to include fax machines. We didn't want to include, you know, when it's a busy signal. So, and we laid that out in our briefs, that we're counting calls where they're reaching the person, they're reaching their answering machine, or they're leaving a message. For instance, there are codes that say, wrong number, right? The person says that we reached the wrong party, and they record that in their notes. Well, in that situation, that'd be a situation where they initiated a call more than twice, but we're not claiming that caused an injury or violation of the consumer's privacy rights. Separate from the invasion of the privacy issue, there's also the intentional fiction of emotional distress, which goes more to the plaintiff's individual claim that the court granted somebody judgment to. Like the invasion of privacy, the court added this IAED requirement for the plaintiff. But there's nothing in the statute that says he has to show severe injury or the injury be intentional. The intentionality for 93A purposes only concerns whether damages should be trebled, not where there's liability in the first instance. And the appellate court in Massachusetts has rejected that line of cases, which seems to suggest you need to show an IAED claim to get emotional distress damages in a 93A case. And that's the... Counsel, is it your position that in this scenario, you could choose to forego any attempt to try to quantify the nature of the injury, the emotional distress, the feelings of invasion of privacy and so forth, and just rely on the statutory minimum damages of $25? I mean, that would be an option? So that once you establish that the impermissible number of calls were made, and there does seem to be a lot of documentation that might allow you to establish that, that once you got that, then you would be entitled to those statutory minimal damages of $25 in each instance? Is that your position? For the class, Your Honor? Yes. Yes. Thank you for that, Clarence. Yes. Yes. Exactly. For the class, yes. We would establish that there is an invasion of the privacy right of the class members. They would be entitled to the $25 minimum, and as we set out in our opening brief in the reply brief, dealing with actual damages. People may have more, but there are mechanisms for the court below to deal with situations where people have more damages, but the class as a whole can be entitled to the $25 minimum. And so because that's one of the reasons you argue that the denial of the motion for class certification was appropriate, because of that statutory minimum would not require any kind of individualized proof, is that one of your arguments against it? Against that denial. Correct, Your Honor. Right. And back to the emotional distress damages for the plaintiff himself, in the, you know, he testified, and it's in the reply brief, in the opening brief, about how he knew that they couldn't call more than twice in a seven-day period, he was getting these calls. He felt frustrated, angered, he had personal tragedies going on in his life, and it was error, at the very least, for the court to enter summary judgment in favor of the defendant on that claim. Thank you, Your Honors. Well, Attorney Thomas, please introduce yourself for the record. May it please the Court, good morning. My name is David Thomas, representing the Appellee's National Grid for his contact in I-Corps, and with me is Angela Bunnell, who's also on brief. The main reason why the Court should affirm both orders is that plaintiff did not create a sufficient record on which to certify a class or to avoid summary judgment. I'll deal with summary judgment first, but before I get there, I just wanted to clarify something. Liability under Chapter 93A requires three things. We need a Section 2 violation, we need causation, and we need a separate and distinct injury under Section 9. If a defendant commits an unfair act under Section 2, that defendant is not liable unless there's causation and a separate and distinct injury. Once we get those three factors, then we start talking about actual versus nominal damages. So in Section 9-1, you have an injury requirement and causation per Tyler. In Section 9-3, we get the actual damages. So when we talk about per se violations of 93A, there are many. There are many per se violations of Section 2. The AG can adopt regulations and say that's an unfair deceptive prey practice under Section 2. What Liardi and then Tyler did in overturning Liardi said there are no per se injuries under Section 9. So that's a clarification. I think that runs through this briefing. The only per se injury that I'm aware of. Tyler was not a per se injury case, was it? It seems to me the court said in Tyler that the receipt of marketing materials that are unwelcomed and should not have been sent causes enough emotional distress that it's a cognizable injury in Massachusetts. Tyler was not a per se injury case. Tyler changed Liardi. Liardi was a per se injury case. Tyler said we're not calling that. Tyler, as I read it, is saying that some states say you can't get emotional distress damages unless it's severe or something like that. But Tyler says the feelings that one gets when you get an unsolicited, unwanted letter in the mail is an injury under Massachusetts law. I think you're referring to footnote 20 of Tyler. What Tyler footnote 20 says when they're talking about the separate and distinct injury, they say it can be measurable emotional distress or invasion of privacy that causes harm worth more than the penny. That's what the Tyler footnote says. We don't believe that Tyler footnote 20 overruled Haddad versus Gonzalez or what that court said or anything like that, nor do we believe it adopted a sort of per se injury standard if you received, for example, a phone call. In Tyler, the Unfair Act was different than the receipt of the actual communication. So they were not tied together. That was the whole purpose of Tyler. But if that's injury, then it seems that it would follow almost a fortiori that getting a phone call is at least as great an invasion on privacy and emotional distress as Massachusetts says getting a letter is. Well, no, I think the case law that's cited in the briefs, the actual conduct from unwanted calls that were lower courts, superior courts stated that invaded privacy or caused distress, the conduct was referred to as insidious. And at the end of the day, the invasion of privacy or whether you have suffered measurable emotional distress is a factual question, right? It's inherently a factual question. There's no... Tyler seems to say that the receipt is itself a cause of injury. I think the cause of... You've had your privacy invaded. I think the injury in Tyler was the Unfair Act was taking the information and then combining with marketing to receive profits and the receipt of unwanted marketing, for example, at your house. Sure. Where you did not give the defendant your address. In this case, the phone number was provided to the defendants. They were service providers. We had the phone number. The phone number was published. So I think there's a different privacy interest involved when it comes to a creditor trying to reach a debtor. This gets me back into the class certification issue generally. Three main points to make on that. It is abundantly clear, number one, that the defendants were challenging injury in fact, in particular, causation and the ability to show a separate and distinct injury with respect to the individual claim and the class claims below. At that point, from this Court's decision in Riazacal, that decision controlled the plaintiff's burden on class cert, and it also really controlled the district court's analysis of what to do with respect to the record. Third point on class certification. The plaintiff did not satisfy the burden by looking at call result codes. That's all the plaintiff relied on, frankly, in a reply brief, not in the opening brief. All the code's evidence is whether or not the subject call connected at the debtor's end, if you will, if we're assuming they're all debtors. All the connected call shows is that there was an initiation of a communication under the Amarda case. Plaintiff's argument that the debt collection violation occurred when the number was dialed, say by National Grid or First Contact or I-Corps, and then the separate injury occurs when the call connects is just wrong. It's inconsistent with Armada. Armada concludes that a creditor initiates a communication by calling a debtor and being able to reach the debtor or leave a voicemail. In other words, when the call connects. So, for example, if I make a bunch of calls to a bunch of debtors using an ATDS or whatever technology and the calls don't go through, they get routed to someone else, there's no violation of the regulation. The call actually has to connect. What do you say about the word initiate? The argument is that what's prohibited under the regulation is the initiation of calls. Correct. Well, it's initiation of a communication, and the Armada case deals with this directly. You initiate a communication when you're able to reach a debtor or leave a voicemail. So the fact that plaintiff is now sort of making a distinction between an inchoate call attempt and the call being connected is inconsistent with the SJC's interpretation of the regulation, and frankly, it's inconsistent with how the plaintiff described it in the opening brief, and furthermore, that distinction, that dialed versus connected distinction of these calls was not raised below. The district court didn't have any opportunity to address it. But at the very most, when we look at the proper definition of initiating a communication, all the codes can show is that when a call attempt actually connects, right, the code showing the call connects, if they're excessive, that only violates Section 2 of Chapter 93A. We have an unfair deceptive practice, assuming that we're going to not challenge the regulation as being outside the scope of 93 or anything like that, but all the codes show is a Section 2 violation. That was our whole opposition to class certification. As recognized by this court in the Shuttless case and other cases, we need Section 2 violation, we need causation, and we need a separate injury. So therefore, on a class basis, standing alone, looking at those codes, we can't get to liability. We can't use them as proxies and assume that if a call connects, someone was there to listen to it, it bothered someone, it interrupted them, it interrupted their mealtime, or did anything like that. And those are the factors that lower court cited in the briefs really focus on when they start getting into invasion of privacy. Nor can we assume phone calls, even if they're excessive, somehow have caused some measurable emotional distress on plaintiff or anybody else in the proposed class. With respect to the invasion of privacy injury in particular, that's the only injury class-wide that the plaintiff seeks an appeal on, a few points there. We provided an expert opinion from Peggy Daly, that's at Appendix 961 to 962. She concluded, it's Opinion Number 7, she concluded there's no way to look at these periods. The plaintiff did not present any rebuttal expert to this. Well, do we have any fact-finding by the District Court on the usability of the records and what information can be gleaned from them? Yeah. The District Court concluded, factually, that the codes could not prove causation of separate injury, as I had just argued. And that is in the... But the court was working with its definition of what a mode of injury is. The court... And it's pretty obvious that you couldn't, from the code, prove the intentional infliction of emotional distress, but did the court analyze whether you could use the code to prove a Tyler-type injury? They... Yeah, the court did, and it was a focus on emotional distress. The plaintiff did not seek certification on emotional distress damages for the class, conceding, probably, that those are individual inquiries. The issue below is whether the calls themselves, the connected calls based on the codes alone, are sufficient to show a separate invasion of privacy-like injury. And our position is that they're not. There's no way to just look at these codes. All they show is a Section 2 violation. So regardless of what standard was applied, and the District Court had to apply some standard, so it chose what MAS deems an evasion of privacy. It would be probably an odd result, indeed, if conduct that didn't arise to an evasion of privacy, as determined by lower courts and under the statute, somehow could be deemed an evasion of privacy injury under Section 9. I don't think that the SJC would construe the statute that way. Ultimately, at the end of the day, with respect to class certification, all the plaintiff presented were these codes. The codes just show the violation of Section 2. They don't do anything else to get us to injury. And we don't believe we can determine factually whether or not there was an evasion of privacy. For example, and we list this on page 48 of our brief, if the phone rings, how do we know someone was home to hear it? How did it invade their privacy? What were they doing at the time? Again, the case law cited by the plaintiff indicates that these phone calls were designed to invade someone's dinner time, and the Superior Court judge referred to that as being insidious. Those facts aren't determined by the codes. The codes can't answer the factual questions to determine whether there was some invasion of privacy. In addition, beyond the codes, the plaintiff, because we're challenging injury in fact, had to show some type of method that we would determine the injury in fact issue as to the class members at trial. The plaintiff didn't provide any method. Their argument here in the field- Counsel, you know, the scheme that you're describing would be really a powerful disincentive for any one individual to try to seek relief. I mean, there'd just be not enough in it for any one individual. But I guess your point is that, okay, that's why the Attorney General has enforcement power, and if there is this widespread disregard of the rule, that's for the Attorney General to deal with and not- Okay, so private enforcement is not realistic. Okay, the Attorney General could step in and deal with the problem. That seems to be what you're really saying, because you're really making it sort of unworkable that any individual would want to go to the trouble, time and trouble of filing a lawsuit here. Yeah, not at all, Your Honor, actually. I mean, the AG can certainly enforce under Section 4 if it wants to, but 93A, for example, allows for attorney's fees. But we're not saying that an invasion of privacy cannot be a separate and distinct injury, or measurable emotional distress cannot be a separate and distinct injury under Section 90. It can be. If someone has been injured and they believe that their privacy was invaded and they have suffered emotional distress damages, does every incentive to file the lawsuit? If there's an unfair act that caused injury under Section 9 and you have damages, you get your attorney's fees and you can get your damages. I don't think it's a disincentive at all. The scheme that I am describing is borne out through the case law in the way the statute's written. Section 2 is unfair act. We all know that. When you look at Section 9 in particular and you look at the Tyler case and the cases after it, Section 9.1 talks about injury and causation. You need some act, Section 2, that causes injury under 9.1. Great. If you don't get that, you get bounced out on summary judgment. If you do get that, then you get down to 9.3. What are your actual damages? If your actual damages don't exceed $25, you get $25. That's how the statute's written and that's how the SJC has interpreted it with respect to Tyler. Our main point on class cert was even if you have those injuries, even if you have the invasion of privacy injury, they had to show some method to adjudicate that because again, the codes just show Section 2 violations. Do the codes show whether the call was completed? The codes show that there's various different codes. The codes will show if the phone rang, for example, if they're able to leave a message, if they're able to connect with someone, for example. So the codes will show that they connected? All the codes show is that essentially the phone rang on the other side. Is it? Well, no. You say it was connected. Right. Connected. So it got answered. I'm sorry? Do you mean answered? Not answered. No, no, no. Not answered. It will show if someone answered. There is a code for answered. Okay. So if you took all the answered codes, why wouldn't it be enough to raise an evidentiary presumption that the human being answered it? So if the human being answers, gets someone on the phone, and they resolve their debt and they keep their lights on, I don't think the class member's privacy has been invaded. Right? So we'd have to determine what happened to that call, what was said. And the case law cited in the brief that the communications that were deemed to be invasions of privacy, people were asking for personal information. If we're talking about distress. Well, but if we take a Tyler definition of injury, the mere fact that the person got the call would be injury. But the injury is the same as the unfair act. Right? That's the issue. Well, not if we accept the initiation theory. Well, the initiation theory is inconsistent with the definition of armada. So armada, the SJC defined initiation of communication as... Right. So the linchpin to your argument is that initiation is not a violation itself. Initiation of communication as defined by armada is a violation. The inchoate call attempt, the fact that we dialed, is not a violation of the regulation. One quick point about the Wilson case that's cited in the brief. In that case, the appeals court recognized that violative communications cannot be proxies for causation and injury when the communication is the unfair act. It cites the Tyler distinguishing it, saying this is different than Tyler because the communication was separate than the unfair act. Thank you. I think I'm out of time, Your Honor. Yes, you are. Thank you. Thanks. Well, Attorney Taylor, please reintroduce yourself for the record. You have a five-minute rebuttal. Thank you, Stephen Taylor, for the appellant, Robert Nightingale. I think it's important to read Tyler v. Michaels carefully and correctly about what it says about the injury being separate and distinct from the underlying conduct. It does not mean that two unfair acts have to occur. It means that whatever is the underlying Section 2 violation, the violation there, which in this case is initiating more than two calls in a seven-day period, that by itself, the violation of that right, which Nightingale and everybody else has, that cannot be the injury for Section 9 purposes. It does not mean that there has to be an unlawful act, which is the Section 2 violation, then another unlawful act, which is the Section 9 injury. It means that there has to be some other right that is harmed, that is left worse off because of the underlying unlawful conduct. What do you say about Armada? Well, Armada says that the initiation of a communication, that's what violates the statute. And what's at issue there is the defense that's raised where they say, okay, we can't reach them, and the AG had some guidance on that and said, look, if you're truly unable to reach somebody, that does not count as initiating a communication. That is a context-specific question. It doesn't mean that just because you get a busy signal, that by itself isn't sufficient to say you didn't initiate a call. You would have to establish that we can't reach this person in the context of a period of time. That's what the court was saying in Armada. What we are not, what the plaintiff is not alleging here or not trying to show is that the underlying unlawful conduct, which is the defendant's initiation of excessive calls, that violation of the regulation is not the injury. The injury is the invasion of the personal privacy of plaintiff and class members. And for plaintiff himself as well, it's also the emotional harm from, the emotional damages from receiving excessive calls. Your Honor, if there's any more questions, I'd be happy to answer them. Let me ask you, opposing counsel mentioned that their expert opinion had not been rebutted. How would you respond to that? Does that have any effect on your claims? For the specific, for the specific reason my brother raised, the expert is that, they said the expert can't identify ways to identify separate identifiable injuries. That's a legal question. They were using the rubric to say, okay, we can't use the result codes to find out how mad somebody was, or how much their privacy was interrupted. Fine, we don't think you can use the result codes to find out what people were thinking. What you can use them to do is to find out whether there was a connected call, whether they spoke with somebody, whether they left a message or could leave a message. So for the expert on that part, what the expert was saying was a legal conclusion. And they can make their factual determinations and the court below didn't address the expert opinion. Does it matter who answered the call? Well, what matters... You would, the class member would be the person who's shown as the intended account holder. Correct. And, but we don't know when the phone rings, who picks it up and answers it. Well, let's say their child answers it. Is that any less of an invasion of privacy? I think that, but where I... It would be who the plaintiff would be. Correct. No, it would be the person who they were intending to call, whose numbers it was, the account holder. If it's their number that they're calling for their account, they are the debtor under the regulation for purposes of the regulation. So if the debtor's spouse answered the phone, you would say the debtor has a claim under the statute. Correct, Your Honor. Thank you. That concludes arguments in this case.